IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Joseph, R.,[1]

       Plaintiff,                                      Civ. No. 3:18-cv-01556-MC

       v.                                             OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for social security disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      On January 30, 2015, Plaintiff filed an application for benefits, alleging disability as of January 15, 2012. Tr. 268.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 271. Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony, in rejecting the examining medical source opinion of Dr. Burns, and in not discussing the treatment note of Dr. Laidler. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At a hearing, Plaintiff alleged his headaches were so severe they stop him in his tracks. Tr. 313. He stated these headaches sometimes last all day and occur three to five times a week. Tr. 318. In a disability report, Plaintiff wrote that his headaches force him to isolate himself from others. Tr. 566. He also reported that his headaches impaired his ability to take care of himself. Tr. 575.

The ALJ determined that Plaintiff had the following severe impairments: acoustic neuroma, a right internal auditory canal mass, headaches, degenerative disc disease, chronic obstructive pulmonary disease, major depressive disorder, anxiety disorder, and posttraumatic stress disorder. Tr. 270. At step 4, the ALJ determined that Plaintiff:

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), in that he can lift fifty pounds occasionally and twenty-five pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. He must avoid concentrated exposure to fumes, odors, dust, gases, and all other pulmonary irritants. The claimant is limited to simple, routine tasks and jobs with a Specific Vocational Preparation (SVP) classification of one or two and a General Educational Development (GED) level of two or less. He can have no contact with the public and only occasional contact with coworkers.

Tr 273.

As noted, Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony as to his limitations, in rejecting the examining medical source opinion of Dr. Burns, and in not discussing the treatment note of Dr. Laidler. I address each argument in turn.

1. **The ALJ's Adverse Credibility Determination**

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). Still, the ALJ must provide "specific, clear and convincing reasons" to discredit subjective symptoms testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). In formulating these reasons, the ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ in this case supported his credibility determination with references to several of the above factors:

> Despite his reports of significant physical and mental deficits, the claimant underwent mostly conservative treatments during the period. Furthermore, his physical and mental functioning remained largely intact and did not reflect his alleged limitations, as he consistently demonstrated a normal gait and intact strength, movement, thought, and behavior.
>
> I also find that the claimant's admitted activities of daily living contradict many of his allegations. The claimant has stated that he could maintain his own care, cook, clean, do the laundry, make jewelry, watch television, leave the house, go shopping, attend church services, and sell jewelry in a public setting. These admitted activities of daily living suggest an ability to perform a range of unskilled, medium work and directly contradict the claimant's allegation that he is unable to work in any capacity.

Tr. 276. (internal citations omitted).

Substantial evidence in the record supports the ALJ's reasoning above; plaintiff's daily activities were inconsistent with his subjective symptom testimony. The ALJ noted that Plaintiff earns extra money by polishing, drilling, and selling rocks at the Saturday market. Tr. 311-12.

4 – OPINION AND ORDER

Plaintiff reported doing "pretty well" keeping his apartment clean. Tr. 934. Plaintiff cooks for himself. *Id*. Plaintiff regularly does his own laundry. *Id*. The ALJ reasonably concluded these activities were inconsistent with Plaintiff's statements that his headache pains make him less able to take care of his daily needs. Tr. 575.

It is reasonable to conclude, as the ALJ did here, Tr. 276, that Plaintiff's weekly sales of rock jewelry at the Saturday market are inconsistent with his statements to examiners that "he has isolated himself and does not want to be around people. He feels worn down and 'scared to go outside,'" Tr. 933. Similarly, it is reasonable to conclude that Plaintiff's testimony of regularly using a Dremel tool to drill and polish rocks is at odds with his complaints of "a lot of numbness in my arm" with "tingling all the way down my fingers." Tr. 321. An ALJ may point to such a contrast as evidence suggesting a lower level of pain and fewer limitations than alleged. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The medical record also supports the ALJ's credibility determination. The ALJ pointed to an unremarkable CT scan of Plaintiff's head in July 2013. Tr. 749. A December 2013 CT Scan was unremarkable as well. Tr. 715. There were normal neurological findings during an exam in November 2014. Tr. 816. At a hearing, certified specialist Dr. Haynes found no basis for limitations due to Plaintiff's headaches. Tr. 290. These findings contrast with Plaintiff's claims that his headaches can debilitate him three to five times a week. Tr. 313, 318.

Finally, the ALJ pointed to the contrast between Plaintiff's allegedly debilitating symptoms and the conservative treatment Plaintiff received:

> Despite his reports of significant physical and mental deficits, the claimant underwent mostly conservative treatments during the period. Furthermore, his physical and mental functioning remained largely intact and did not reflect his alleged limitations, as he consistently demonstrated a normal gait and intact strength, movement, though, and behavior.

Tr. 276.

5 – OPINION AND ORDER

The ALJ properly supported his credibility determination with substantial evidence from the medical record, and thus this Court "may not engage in second guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

**2. The ALJ's Rejection of Dr. Burns's Opinion**

In January 2015, Dr. Burns assessed Plaintiff's condition. The ALJ summarized Dr. Burns' opinion: "claimant could not maintain attendance, attention, or concentration; remember or carry out even moderately complex instructions; or work in coordination with or in proximity to others." Tr. 276–277. The ALJ gave minimal weight to Dr. Burns' opinion, finding it conflicted with Plaintiff's behavior in the record as well as the opinions of the reviewing medical experts. Tr. 277.

Generally, an examining doctor's opinion is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1). However, when faced with conflicting medical evidence, the ALJ is charged with resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When an examining doctor's opinion conflicts with another doctor's opinion, an ALJ "may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here the ALJ has provided just such a summary when he stated: "[Dr. Burns's opinion] do[es] not reflect the claimant's repeated demonstrations of intact orientation, thought, alertness, cognition, insight, and judgment throughout the period, or his often-stable mood and affect.

These opinions contradict those of the testifying medical experts." Tr. 277. (internal citations omitted). The ALJ specifically referenced many such inconsistencies in his decision. What follows is a non-exhaustive list.

A 2009 examination found Plaintiff to be "polite and cooperative" as well as estimated his intellectual abilities to be normal. Tr. 635. In August 2014, a psychiatric evaluation stated Plaintiff has "grossly intact" cognition and is "pleasant toward examiner." Tr. 1193. A December 2014 evaluation made largely the same findings as the August 2014 evaluation. Tr. 1005. In October 2016, an exam found Plaintiff to have normal mood and "unremarkable" findings for his thought processes. Tr. 1453. During a hearing, Dr. Haynes testified that, after reviewing the entire medical record, he saw no basis for any limitations on Plaintiff's ability to work. Tr. 290. All of the above contradicts Dr. Burns' assessment that Plaintiff cannot follow moderate instructions or work with others.

Additionally, it was not unreasonable for the ALJ to note inconsistencies between Plaintiff's statements to Dr. Burns with Plaintiff's activities. Plaintiff explained to Dr. Burns, "I try not to go out. I don't go out there because I don't feel safe no more." Tr. 946. Plaintiff also stated that he had not ridden the bus in several years because he does not like crowds. Tr. 946. However, as noted above, Plaintiff earned supplemental income selling his jewelry many weekends at a crowded public market. Given the totality of the conflicting evidence, the ALJ did not err in giving little weight to Dr. Burns's opinion.[3] *Reddick*, 157 F.3d at 725.

/ / / /

/ / / /

---

[3] The Court notes that despite giving little weight to Dr. Burns' opinion, the ALJ did not find Plaintiff had no non-exertional limitations. To the contrary, the ALJ limited Plaintiff to performing simple, routine tasks with no contact with the public, and only occasional contact with coworkers. Tr. 273.

### 3. The ALJ did not Mention Dr. Laider's Treatment Note

In February 2015, Dr. Laidler treated Plaintiff for his chronic headaches. Tr. 937–940. After treatment, Dr. Laidler diagnosed Plaintiff with occipital neuralgia, stating:

> "The prognosis for occipital neuralgia is guarded - it tends to be progressive even when agressively [sic] treated. The patient has had good relief from a nerve block, and that suggests that there is some potential for relief with interventional pain techniques. However, that remains to be seen, and the natural history of greater occipital neuralgia is that absent therapeutic interventions that it gradually worsens over time, often becoming debilitating."

*Id.* As noted, the ALJ did not discuss this treatment note. Plaintiff asserts that ALJ's failure to do so amounts to harmful error. Pl.'s Op. Br. at 7. The Court disagrees.

An ALJ need not mention every piece of evidence in reaching a decision. Rather, she must explain only why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, the evidence not mentioned by the ALJ—Dr. Laidler's treatment note—is not probative because nothing in it speaks to the Plaintiff's residual functional capacity. Tr. 940. Nowhere does Dr. Laidler's treatment note specifically indicate how Plaintiff's ability to work is limited. Moreover, the language used throughout the note merely outlines the general, expected future prognosis for one with occipital neuralgia. "Remains to be seen," "gradually worsens *over time*," and "*often becoming debilitating*" all indicate Dr. Laidler offered his opinion on how the diagnosis might one day impact Plaintiff's ability to work. *Id.* (emphasis added). Therefore, even if Dr. Laidler assessed Plaintiff's future ability to work, such an assessment is merely conjectural. Because Dr. Laidler's opinion is conjectural, his treatment note is not "significant probative evidence" and thus the ALJ did not err in not discussing it. *Vincent*, 739 F.2d at 1395.

/ / / /

/ / / /

8 – OPINION AND ORDER

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 3rd day of January, 2020.

_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge